Good morning, Your Honors. May it please the Court, Jay Corrington on behalf of Plaintiff Appellant Shauna Montes. I would like to reserve three minutes of my time for rebuttal and I'll keep track of time. Okay, great. We are here on the issue of whether the injury element of the Washington CPA claim can be established in a false discount advertising case. Ms. Montes has alleged three injury theories, which she refers to in her briefs as the purchase price theory, the benefit of the bargain theory, and the price premium theory. Before I go into these three injury theories, I would like to remind the Court that Ms. Montes has filed a motion to certify this question to the Washington Supreme Court. That's docket 4, and that motion was referred to this panel to be decided. We still believe that the Washington Supreme Court would be in the best position to answer this question, given that this issue carries significant public policy implications that would affect all Washington consumers. Unless the Court has any questions about the motion to certify, I'll move on to the three injury theories, starting with the purchase price theory. Under the purchase price theory, Ms. Montes alleges that she suffered an injury in the money that she spent purchasing a product from Aeropostale that she would not have bought but for Aeropostale's misrepresentations. This injury theory was recognized already by the Washington Court of Appeals and Williams v. Lifestyle Lift Holdings. Because the Washington Court of Appeals has What was the misrepresentation in Williams? In Williams, the — it was some deceptive marketing regarding a surgical procedure being quick and painless. So, I mean, it's different if there's a misrepresentation about the quality or character of the product you're getting. Then I understand the argument. But here the misrepresentation relates to price, but she knows the price she paid for it and decided that the product was something she wanted at that price. And it's — there isn't any feature of it, as in Williams, that affects price because the falsity is price. So I — that's what I'm having trouble with. Well, Your Honor, this actually was the exact reason why this Court in Clark v. Eddie Bauer ultimately certified the question to the Oregon Supreme Court. But Oregon had a specific statute that covered this. Does Washington have a statute that is comparable to the Oregon one? So the CPA, the Washington CPA, has a — just a catch-all. And the purpose — It doesn't have a specific price history thing like in Oregon. No. It would have — it covers all forms of deceptive advertising. In fact, at the time that states were adopting one of the sort of mini-FTC acts as their own state consumer protections, there were three versions, and Washington chose the broad one. Is there any federal appellate or state Supreme Court authority other than Oregon with a special statute that has recognized this kind of a claim? Under the purchase price theory? Correct. Well, California has, but they also do have a list. But, well, actually, the — California has three consumer protection statutes. And in Hinojos, this Court looked at the UCL and the FAL, and they do not have a list of prescribed practices. It is a catch-all, the same as Washington. And this Court interpreted the statutory language of lost money or property to include this — the  And after Hinojos was decided, the California Court of Appeals in Hansen confirmed that the Ninth Circuit was correct in interpreting and how it interpreted California law. We do believe, though, that because Williams — if — of course, if this Court does have a belief that the type of misrepresentation does affect the claim, then we do believe that we are in a very similar situation as to the Clark v. Eddie Bauer case. If you read that decision, the Oregon Supreme Court does not really emphasize that. It's because there's some very specific practice. Any unlawful conduct that would be there would be included. So — but we would think that if this Court has that distinction and thinks that Williams is not directly on point, then we would encourage the Court to do as it did in Clark and certify this to the Washington Supreme Court. However, if this issue is not that distinguishable, then we believe that the Williams decision decides the case — decides on this purchase price theory because, as this Court has held, a higher standard is applied when a State court appellate decision is on point. And in Ryman, this Court said that the — that Federal district courts must follow the intermediary State appellate decisions unless there is convinced — or unless there is convincing evidence that the Washington or the State supreme court would decide the issue differently. And Aropostal does not cite any evidence, let alone convincing evidence, that the Washington supreme court would decide this issue differently. So we believe that this analysis would be straightforward if the Court believes that there is no distinction between the types of misrepresentations. I would like to move on to the price premium theory. We believe that this is — I want to switch on to this one. It's the third-entry theory in the briefing. But I would like to focus on this one because this is the one-entry theory that Aropostal does not dispute would constitute an injury under the CPA. The price premium theory focuses on how Aropostal's false advertising allowed it to increase consumer demand, which in turn allowed it to charge higher prices to everyone absent these misrepresentations. And that extra amount that Aropostal was able to charge is the price premium and is the damages. This — this type of damages is not controversial. It's just out-of-pocket damages. And Aropostal does not dispute that this would be an injury. Rather, Aropostal is arguing that on a motion to dismiss that it's impossible for a plaintiff to present expert evidence to actually show this price That's simply not true. Our law firm has in a previous false discounting case produced this type of expert evidence. That was in Brazil v. Dell. And we were able to use that expert evidence to successfully certify a class. So any notion that this type of expert evidence is impossible is simply unfounded. Beyond that, this Court has recognized the price premium theory. In Brasino, this Court affirmed certification of 11 State classes based on what the Court referred to as the plaintiff's two well-established damage models that are able to calculate the price premium attributable to their theory. Additionally, the courts have also interpreted or has applied the price premium claim. From an ICPAL point of view, are there facts in the complaint that create a plausible inference that there was a price premium, or does it just sort of conclude or really asserted that there was a price premium? We certainly believe that there are, but also that was not challenged below in terms of whether or not it was plausible. Of course, if that had been challenged, we certainly would have addressed it. And if ultimately if this Court believes that for whatever reason the allegations are not sufficient enough, then we would ask the Court for DeGrant leave to amend so that we could flesh out however the Court believed was necessary to do so. I will say, however, that the recent case, Fitzgerald v. Shade Store, out of the Western District of Washington by Judge Martinez in July, it's a false discount case. And Judge Martinez, he first, he recognized the purchase price theory, and then he also went on to look at the plaintiff's allegations about price premium, and he said that those were sufficiently alleged, and the allegations in that plaintiff's complaint mirror ours. So we don't believe that there would be an issue in terms of plausibility for purpose of a motion to dismiss. And the last injury theory I would like to get into is the benefit-of-the-bargain theory. Under this theory, Ms. Montes' injury is the loss of not receiving the value of the bargain that was represented to her by Eropostal. And we believe that the benefit-of-the-bargain rule is, is, has been used by courts for over a century, and this theory tracks that. And the rule is, under the rule, the loss is measured by the difference between the actual value of the product at the time of purchase and what its value is represented to be. And we believe that — And isn't that just a damage theory? Well, it's — I mean, the Washington Supreme Court said distinguished injury from damage is in the context of the Act. And it struck me that your benefit-of-the-bargain theory was just a damages theory and not an independent injury theory. Well, injuries can certainly translate into damages, and I guess — and I guess actually it would be better to work backwards. A damage, an actual damage, could certainly — would almost certainly constitute an injury and satisfy that. So we don't believe that that would necessarily preclude it, that you'd have an injury that is completely divorced from — has to be completely divorced from a damages theory, if that makes sense. But under this theory, we do believe that the Court really — that there should only really be about two questions that the Court needs to answer before she, Ms. Montes, can move forward with her claim. And the first is whether the benefit-of-the-bargain rule applies to CPA claims. And the Washington Supreme Court said that, yes, they do in Mason v. Mortgage America. And then the second question is whether the benefit-of-the-bargain rule applies to misrepresentations about the value of an item. And the answer to that is also, yes. First, Washington courts have never excluded a type of misrepresentation from the benefit-of-the-bargain rule. And, in fact, the Washington Supreme Court in Sigmund said, quote, the constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. And there's no dispute here that a wrong has been done. Arabesol actually, for purposes of the motion to dismiss, concedes that it — that we've alleged a deceptive act. So we believe that there's no reason why misrepresentations about a value of an item would be excluded when no misrepresentation has been excluded before. I notice that I am low on time, so I would like to reserve the remainder for rebuttal. May it please the Court. Michael Dominick, Mutey, here from Benesh for Arapostale. The Court should affirm. Simply put, the district court got it right. The allegations here do not amount to an injury to business or property. Here Montes is a consumer who admits that she's been a regular shopper at Arapostale for years and that she's made numerous purchases, both online and in stores. She saw a pair of six-dollar pants, chose to order them, and received exactly what she had ordered. That's a straightforward transaction. It is not an injury. All of plaintiff's theories contending otherwise would yield a windfall. The plaintiff would get to keep the item she ordered and received. She'd also get a full refund or maybe some other unspecified measure of damages. And she'd do all of that without alleging — California and Oregon courts have recognized the kind of theory he's asserting. Why isn't that kind of a theory consonant with Washington law, in your opinion? I'll take California first. As courts across the country, including this court in Lee Pink, recognize, the UCL is sui generis and cannot inform other states' consumer protection laws. As for Oregon, as you noted, Judge Collins, that State has a robust regulatory apparatus identifying which representations can and cannot be made about a price. And one of the reasons that Clark gave for recognizing the claim there was that it did not believe that the legislature would have enacted those regulations and not subjected them to enforcement. More broadly, the theories that plaintiffs put forward here, they do violence to the CPA's text. The CPA requires that a plaintiff be injured in her business or property by a violation. That's Code 198690. And three important conclusions flow from this text. First — California has the same text in the UCL, injury to business or property. I think it's money or property there. Or money or property. But isn't that comparable? The UCL has a different apparatus. The UCL offers only injunctive relief as opposed to damages. Let me ask you, so our court also in Hinoso recognized this type of damage. I mean, admittedly, it was under California law. But the opinion itself goes on and on about why this actually constitutes an injury. How do you distinguish Hinoso? So Hinoso says it in Note 5 that for the UCL, the causation element and the injury element are functionally equivalent. They're basically merged. That's different from Washington. Washington and Hangman Ridge made clear that the CPA's five elements are independent of each other. If we're looking to California and UCL analogies, Chowning provides the better analogy here. Hinojo's concerns standing. Chowning made clear that if a plaintiff is to seek monetary compensation under the UCL, their restitution, here it would be damages, the plaintiff has to allege and prove that the value of what the plaintiff received was less than what she paid. Montes alleges nothing of the sort. She bought a $6 pair of pants. She received a $6 pair of pants. She does not say that they were defective in any way, that she was disappointed in their workmanship, materials, fit, style, anything. She got what she paid for, and that is not an injury. The CPA makes clear that injury causation is required, not transaction causation. So in this Washington Supreme Court in Mason interpreted Hangman Ridge, you just cited, and it says the injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct, even if the expenses caused by the statutory think she was getting a discounted pair of pants, so something of greater value than what she thought she was purchasing. Your Honor, that's transaction causation as opposed to injury causation. And the text of the Washington Consumer Protection Act makes clear that you need an injury caused by the violation, the alleged violation, not just a transaction. To illustrate in a different context, suppose you wire money to a stockbroker in order for the stockbroker to purchase shares of Company A, and you do that based upon the stockbroker's representations about Company A. Three months later, you check your account. You find out, oh, no, he didn't order Company A. He bought shares of Company B. But you check the markets, and you find out Company B's shares are up 20 percent, Company A's shares are down 20 percent. The misrepresentation caused a transaction. It did not cause an injury. And that shows that in order to state a CPA claim, the text of the CPA requires injury causation, not just transaction causation. And all Montes offers here is injury or, I'm sorry, is transaction causation. And you mentioned Mason. It's notable there that the Court held that the fact of loss has to be established with sufficient certainty to provide a reasonable basis for estimating the loss. And plaintiffs here have said that our arguments are all based on damages, not injury. It's true that some authorities recognize that the CPA will entertain nonmonetary harms, like harms to reputation or goodwill. This case, though, it addresses only alleged economic harms. And for alleged economic harms, damages and injury are two sides of the same coin. If the damages are zero, then there is no injury. And Montes hasn't offered anything to suggest that she has suffered any damage, that she is objectively worse off because of the purchase than she would have been otherwise. Instead, all she alleges is that she has engaged in the transaction. Entertaining that theory that any consumer who enters into a transaction and is later disappointed can sue to get a full refund of the cost of that transaction, that would open floodgates. It would enable a consumer to contend, well, I'm kind of disappointed by this cologne I bought. It doesn't smell as good as I thought it would. And I bought it because there were attractive models used in the ads. I spray it, I still look like this, I don't really like it that much, CPA violation. That's too broad. That's not tying an actual injury, an injury, to the alleged violation. That's what she needs to do here. Now, all of Plaintiff's theories here are damages theories. Her purchase price theory is an out-of-pocket damages theory by a different name. What she's really seeking is a full refund under that theory. There are a couple of problems with that. First, it would result in a windfall. It ignores the value received. Second, it's atextual. As noted previously, the CPA requires that the alleged violation cause injury, not just that it cause a transaction. And as noted a moment ago, buyer's remorse is not an injury. It's a subjective harm. And Washington authorities make clear that the CPA does not embrace those types of subjective harms. Turning to the — Shouldn't they certify this to the Washington Supreme Court, because we did that with Oregon? Your Honor, we don't believe that's necessary. Courts across the country have addressed this issue under State statutes as a matter of law, and have done so without certifying. The First Circuit did it in Chalice. The Sixth, Seventh, and Eighth Circuits have also decided the same issue. And in each case — And we did it in Hinoso and came out the other way. I'm sorry? I think it was Eddie Bauer. In Clark. Clark. Yes, Your Honor, you did. I don't believe it's necessary here. If — we would, of course — not to be glib here, but we would, of course, prefer that you certify it than decide against us. But we don't think that certification is necessary here. And we believe it's especially inappropriate here because plaintiffs began in State court lost, and now they're trying to go back to State court. That kind of forum shopping is discouraged. This Court's jurisprudence discourages it, as noted in our opposition to their motion to certify. If I could address the price-premium theory. They say that we don't dispute that that creates an injury. That's wrong. We do dispute that their price-premium theory creates an injury. Their theory is that anything that shifts demand and, therefore, allows a retailer or any seller to sell more or to sell at a higher price creates an injury. We disagree with that. All of the cases that they cite are cases that address an objective disparity between what was promised and what was delivered. Why isn't that a viable theory? If, in the alternative world, where you didn't make false representations about price history, the actual market price would have been $5. But by making price history false claims about what the past or regular price has been, the price goes up to $6. Why isn't that an injury? First of all, to the falsehood. The concept that anything that shifts the demand for something can create an injury. No, but I just gave you a specific but-for causation hypothetical. Is the answer in that hypothetical that that's not an economic injury for purposes of the Washington statutes? Correct, Your Honor. And why? In order for there to be an economic injury, there has to be an objective disparity between what was promised and what was delivered. It has to — the transaction has to leave the consumer worse off. That would be a benefit of the bargain theory, which is one of their other theories. But their theory is that the falsehood changes the price. If the falsehood inflates the price. That theory proves too much. It would allow — using attractive ads in a model, using bright-colored packages, any of those things that a company may do — Those are not falsehoods. They could be alleged to be unfair under the Washington Consumer Protection Act. And as a point of factor, Your Honor, it's important to note that here Montes admits that the very pants she's — that are at the center of this case were offered for the full $12.50 price just three days prior to when she bought it. Now — It was like the only time in the last two years that they ever had that price. We dispute, as a matter of law, that a former price is a representation of value. And to illustrate, earlier this month I bought Halloween costumes for my kids. Come November 1st, those will sell for a fraction of what I paid for them. Right, but that's — I don't think that's analogous. It's because the event has passed. I mean, on November 1, they aren't worth the value that they were because the event you purchased them for is passed. Exactly, and that shows that the value of a consumer product, a mass-produced consumer product like we're talking about here, is the current selling price. So, I mean, I have to look at this from common sense. I shop a lot, and I have to admit, I think I'm getting something of value when I buy it on sale. And it does — and often, you can ask my husband this, often I will buy stuff I never even wear because it was on sale because I think I'm getting something of value. Ultimately, the consumer's individual assessment of value is a subjective factor that doesn't equate to a CPA injury. I mean, economically, a consumer will buy something — But the places where I shop are places where they're not falsifying. They're saying this was sold at this price, and I know it was sold at that price because I see it at that price regularly, and then when it drops, then I think, okay, now I can buy it. And that provides a great distinction between you and the plaintiff here, Your Honor. Here, the plaintiff admits that she is a regular shopper at Aeropostale, and the plaintiff alleges in her complaint that the stores and websites are constantly, perpetually, in her words, using signs that say 50 to 70 percent off of everything. Simply put, it is implausible in light of those allegations that she could have been injured in the way that she claims. I see that my time's up. If there are no further questions, if there are, I'd be happy to answer them. If there are no further questions, we ask that the Court affirm and affirm the dismissal of the complaint without leave to amend. Thank you. Thank you very much, counsel. I would like to start backwards, basically, to address some of the arguments. First, this argument that was raised about her being a regular shopper, that word regular cannot possibly be used to mean something that she's been there all the time. We believe that that could be as simple as shops there more than once or once a year. There's no way she could have known that, and on a motion to dismiss, the complaint must be taken as true, and she alleges that she did not know about these false reference prices. I would also go to this notion that Oregon and California have this thing called transaction causation. That's not a thing. Well, but I took a look at Hinojos and Hanson, and both of them place weight on the fact that California, like Oregon, has specific prohibitions. California actually has two of them on price history misrepresentations. So that brings me back to my question. Do you have any jurisdiction, state court or a federal court, addressing state law where your theories have been accepted in the absence of such a statute? Well, again, Hinojos does address it for UCL and FAL, and I know that they have a separate section that talks about the CLRA, which has that enumerated list, but that's not a distinction that they make, rely upon. They both mention that California has a specific prohibition and then put some weight on that. But I'll ask my question again. Yeah, of course. Is there a case out that upholds the theories you're asserting in the absence of such a statute? Yes or no? No. Not outside of that one, no. But as this Court did explain in Hinojos, that there is an economic injury. It's not a transaction causation. There's an actual economic loss there. Both these statutes have a lost money or property injury requirement. So they've not merged the elements. And to my last point, this concept of damages versus injury is being conflated improperly because injury is broader than damages. The Washington Supreme Court in Nordstrom explained that a plaintiff can allege an injury without showing damages. And the reason for that is because the statute allows for injunctive relief. And the — in Scott v. Singler, the Washington Supreme Court explained how important and vital private enforcement is of the CPA. And the Court treated a plaintiff as a private attorney general who's not — who's representing the public's interest to be free from deceptive acts. And accordingly, a plaintiff in that position can seek an injunction even if it would not affect themselves. So the need to distinguish the damages and injury is necessary because while a plaintiff may be able to establish the injury, they can then seek the injunctive relief even if they could ultimately not prove damages in the end. And I believe that that is an important distinction that the Court should be acknowledging. I see that I'm out of time, so I would ask that the Court reverse the district court's order or, on the alternative, certify this to the Washington Supreme Court. Thank you. Thank you very much. Montes v. Spark Group is submitted, and this session of the Court is adjourned for today.
judges: THOMAS, WARDLAW, COLLINS